| | |
|---|---|
| JUNIOR ORTIZ,<br>         Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br>         Defendant. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, Junior Ortiz, by and through his undersigned counsel, brings this Complaint against Defendant, United Parcel Service, Inc., and in support thereof avers as follows:

### I.        PRELIMINARY STATEMENT

1.        This is a civil action for damages and other legal and equitable relief brought by Plaintiff, Junior Ortiz ("Mr. Ortiz" or "Plaintiff"), against Defendant, United Parcel Service, Inc. ("UPS" or "Defendant"), arising from unlawful discrimination and retaliation that Plaintiff experienced during his employment with Defendant, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"); and the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA").

### II.        JURISDICTION AND VENUE

2.        This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, in that this action arises under the laws of the United States, specifically the ADEA, Title VII, and the ADA.

3.        This Court has supplemental jurisdiction over Plaintiff's state law claim brought under the PHRA pursuant to 28 U.S.C. § 1367(a), in that the state law claim arises from the same

case or controversy as Plaintiff's federal claims and derives from a common nucleus of operative fact.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, at Defendant's facility located at 15 East Oregon Avenue, Philadelphia, Pennsylvania 19148.

### III. PARTIES

5. Plaintiff, Junior Ortiz, is an adult individual who resides at 179 W. Thelma Street, Philadelphia, Pennsylvania 19140.

6. Defendant, United Parcel Service, Inc., is, upon information and belief, a corporation authorized to conduct business in the Commonwealth of Pennsylvania, maintaining a facility located at 15 East Oregon Avenue, Philadelphia, Pennsylvania 19148, and, upon information and belief, employed approximately 500,000 or more employees during the period relevant to this Complaint.

7. At all times relevant hereto, Defendant was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b); Title VII, 42 U.S.C. § 2000e(b); the ADA, 42 U.S.C. § 12111(5); and the PHRA, 43 P.S. § 954(b).

8. At all times relevant hereto, Plaintiff was an "employee" of Defendant within the meaning of the ADEA, Title VII, the ADA, and the PHRA.

### IV. ADMINISTRATIVE PREREQUISITES

9. Plaintiff timely filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), Charge No. 530-2025-

04971, on or about April 3, 2025, alleging discrimination on the basis of age, disability, and sex (including sexual orientation), and retaliation.

10. On or about May 11, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, notifying Plaintiff of his right to sue Defendant on EEOC Charge No. 530-2025-04971. This action is filed within ninety (90) days of Plaintiff's receipt of that Notice, satisfying 42 U.S.C. § 2000e-5(f)(1) as to Plaintiff's Title VII claims and 42 U.S.C. § 12117(a) as to Plaintiff's ADA claim.

11. More than sixty (60) days have elapsed since the filing of Plaintiff's Charge, satisfying the requirements of 29 U.S.C. § 626(d) for purposes of Plaintiff's ADEA claim.

12. More than one (1) year has elapsed since Plaintiff dual-filed his Charge with the PHRC without resolution, satisfying the procedural prerequisites for a private right of action under the PHRA, 43 P.S. § 962(c)(1).

13. Plaintiff has satisfied, or is otherwise excused from, all administrative prerequisites and conditions precedent to the institution of this action under the ADEA, Title VII, the ADA, and the PHRA.

**V.      FACTUAL ALLEGATIONS**

14. Mr. Ortiz was born on February 17, 1979, and was over the age of forty (40) at all times relevant to this Complaint.

15. Mr. Ortiz is a gay man and is, and at all relevant times was, a member of a class protected from discrimination because of sex, including sexual orientation, under Title VII. See Bostock v. Clayton County, 590 U.S. 644 (2020).

16. On or about September 30, 2024, Defendant hired Mr. Ortiz as a Warehouse Loader and Unloader at its facility located at 15 East Oregon Avenue, Philadelphia, Pennsylvania.

17. Mr. Ortiz was qualified for his position, performed his job duties successfully, and received no write-ups or discipline of any kind during his employment with Defendant.

18. Almost immediately after Mr. Ortiz began working for Defendant, Defendant's manager, Steve Paul, and at least two of Defendant's supervisors, identified as "Kemaya" and Kyree Coppage, began subjecting Mr. Ortiz to a pattern and practice of harassment based on his sexual orientation and his age.

19. Among other things, Mr. Ortiz was subjected to severely homophobic remarks, including statements that "we don't want any fags working here" and "what's wrong with him, he's too soft; is he gay?"

20. Furthermore, when Mr. Ortiz reported for work, his supervisors would frequently make derogatory and homophobic remarks about him in the presence of other employees. For example, during workplace huddles, supervisors would react to Mr. Ortiz's arrival by warning others, "Watch out for that one—he will grab your ass," or making substantially similar comments. These remarks were unwelcome, offensive, and based on stereotypes concerning Mr. Ortiz's actual or perceived sexual orientation.

21. Mr. Ortiz was also subjected, on a near daily basis, to remarks disparaging him because of his age, including statements that "we don't need old-ass people working here" and "why the fuck are they fucking hiring old people?"

22. Kyree frequently yelled at Mr. Ortiz and referred to him as an "old-ass man." Through these and similar remarks, Kyree expressed hostility toward older employees and made clear that he did not want older individuals working at the facility.

23. Defendant's managers also engaged in a pattern of conduct that isolated Mr. Ortiz from his coworkers and interfered with his ability to receive work-related information. Among

4

other things, managers excluded Mr. Ortiz from safety huddles and employee meetings, leaving the cafeteria as one of the few places where he could interact with his coworkers.

24. Mr. Ortiz also witnessed managers subject female employee(s) to unwelcome sexual conduct, including inappropriate touching and sexually harassing remarks.

25. Mr. Ortiz reported the discriminatory and harassing conduct, including the treatment directed toward him, to management. Rather than investigate or take corrective action, the managers laughed at and dismissed Mr. Ortiz's concerns.

26. In addition to the explicit homophobic and age-based remarks described above, Steve Paul, Kemaya, and Kyree Coppage subjected Mr. Ortiz to a pattern of antagonistic, exclusionary, and demeaning treatment in their day-to-day interactions with him.

27. These behaviors were directed at Mr. Ortiz in a manner that differed from the treatment afforded to younger and heterosexual employees. Defendants' managers and supervisors routinely singled him out for dismissive, hostile, and unnecessarily confrontational treatment, creating an atmosphere intended to isolate, demean, and humiliate him.

28. Among other things, Mr. Ortiz was regularly ignored when he asked work-related questions, spoken to in a condescending and disrespectful manner, subjected to unnecessary criticism, and treated with hostility over routine workplace matters. He was made to feel unwelcome and as though he did not belong in the workplace.

29. Steve Paul, Kemaya, and Kyree Coppage also engaged in conduct designed to undermine Mr. Ortiz's dignity and make his work environment intolerable, including excluding him from ordinary workplace interactions, treating him with visible disdain, and scrutinizing his work more harshly than that of similarly situated employees who were younger and not gay.

30. The pattern of conduct directed toward Mr. Ortiz was not accidental or isolated. Rather, it occurred repeatedly throughout his employment and, when considered together with the explicit homophobic and age-based comments, reflected a coordinated course of discriminatory harassment targeting him because of his sexual orientation and his age.

31. As a result of this ongoing harassment, Mr. Ortiz experienced humiliation, emotional distress, anxiety, and a significant deterioration in the terms and conditions of his employment. The cumulative effect of the verbal harassment, targeted hostility, and differential treatment created a work environment that a reasonable person would find hostile, abusive, and intimidating.

32. The conduct described above was sufficiently severe and/or pervasive to alter the conditions of Mr. Ortiz's employment and to create a hostile and abusive working environment.

33. Throughout his employment, Mr. Ortiz repeatedly attempted to report the ongoing discriminatory harassment and hostile work environment through Defendant's internal reporting mechanisms, including the UPS Ethics Hotline. In doing so, he engaged in protected activity by opposing conduct that he reasonably believed constituted unlawful discrimination and harassment based on his sexual orientation and age.

34. Rather than conducting a prompt, thorough, and impartial investigation into Mr. Ortiz's complaints, Defendant failed to meaningfully inquire into the allegations, disregarded the hostile and abusive conduct that he reported, and closed his complaints without taking reasonable corrective action to stop the discrimination or protect him from further harassment. As a result, Mr. Ortiz was forced to continue working in the same hostile environment with no meaningful internal recourse.

35. During his employment, Mr. Ortiz filed two separate internal ethics complaints concerning, among other things, the discriminatory harassment, hostile work environment, and disparate treatment to which he was being subjected by Steve Paul, Kemaya, Kyree Coppage, and other supervisory personnel.

36. Each of Mr. Ortiz's ethics complaints was closed by Defendant shortly after it was filed, without a meaningful investigation, without adequately interviewing relevant witnesses, without addressing the substance of his allegations, and without implementing any remedial measures reasonably calculated to end the unlawful harassment.

37. Instead of responding appropriately to Mr. Ortiz's protected complaints, Defendant retaliated against him for engaging in protected activity. Shortly after each ethics complaint was closed, Defendant subjected Mr. Ortiz to materially adverse employment actions, including changing his employment status from permanent to seasonal and, ultimately, terminating his employment.

38. The close temporal proximity between Mr. Ortiz's protected complaints and Defendant's adverse employment actions, together with Defendant's failure to meaningfully investigate or remedy the discrimination he reported, supports a reasonable inference that Defendant's stated actions were motivated, at least in part, by retaliatory animus arising from Mr. Ortiz's opposition to unlawful discrimination.

39. In 2018, Mr. Ortiz was involved in a motor-vehicle accident that caused significant and permanent damage to his teeth and mouth.

40. At the outset of his employment, including during orientation, Plaintiff expressly informed Defendant, through its supervisory and/or management personnel, that injuries sustained in a prior motor-vehicle accident had caused severe and permanent damage to his teeth and mouth.

Plaintiff further informed Defendant that this ongoing physical impairment substantially limited his ability to eat, chew, and speak as compared to most people in the general population; that he required extensive oral surgery, including the extraction of all of his teeth, to treat the condition; and that he would need medically necessary leave to undergo and recover from the procedure. Defendant therefore had actual notice of Plaintiff's physical impairment, the substantial limitations it imposed on major life activities, his anticipated surgery, and his related need for medical leave before Plaintiff underwent the procedure and before Defendant terminated his employment.

41. In or about September 2024, Mr. Ortiz learned that the injuries caused by the accident required extensive oral surgery, including the extraction of all of his teeth.

42. On or about December 3, 2024, Mr. Ortiz underwent a full-mouth extraction during which all of his teeth were surgically removed, which required him to take several days of medical leave. Mr. Ortiz requested the necessary time off and notified Defendant of the procedure and his need for leave.

43. While Mr. Ortiz was on medical leave, Defendant changed his employment classification from permanent employee to seasonal employee without notifying him or providing any legitimate explanation for the change.

44. Before taking medical leave, Mr. Ortiz had been employed and classified as a permanent employee, and he had not been informed that his position was temporary or seasonal.

45. When Mr. Ortiz questioned Defendant about the unexplained change in his employment classification, Defendant's representatives avoided his inquiries and failed to provide him with a meaningful explanation.

46. As a result of the oral surgery, Mr. Ortiz developed a noticeable speech impediment that substantially limited one or more major life activities, including talking and, upon information and belief, eating and drinking.

47. On or about December 11, 2024, Mr. Ortiz returned to work at UPS. That day, Steve Paul mocked and laughed at Mr. Ortiz and remarked that Mr. Ortiz "did not sound like himself," referring to Mr. Ortiz's speech impediment.

48. After completing the procedure and the initial period of recovery prescribed by his healthcare provider, Mr. Ortiz returned to work and presented Defendant with a physician's note substantiating his surgery and medically necessary absence.

49. Kyree nevertheless falsely told Steve Paul that Mr. Ortiz's physician's note was fraudulent, even though the note was authentic and had been issued by Mr. Ortiz's healthcare provider.

50. Kyree also falsely stated or spread rumors in the workplace that Mr. Ortiz had a drug problem. Mr. Ortiz did not have a drug problem, maintained a commercial driver's license, and had never failed any required drug screening.

51. When Mr. Ortiz returned from his medically necessary leave and provided Defendant with his physician's note, Defendant informed him that his employment had been terminated.

52. It is believed and therefore averred that Defendant therefore changed Mr. Ortiz's classification from permanent to seasonal and terminated his employment only after learning of his serious dental and oral condition, his need for extensive oral surgery, and his request for medically necessary leave.

53. Later that same day, on or about December 11, 2024, Defendant furloughed Mr. Ortiz.

54. Upon information and belief, employees outside of Mr. Ortiz's protected classes — including younger employees, heterosexual employees, and employees without a disability — were not subjected to the harassment, furlough, reclassification, or termination that Mr. Ortiz experienced, and/or were treated more favorably than Mr. Ortiz under similar circumstances.

55. Any legitimate, non-discriminatory or non-retaliatory reason offered by Defendant for its treatment of Mr. Ortiz, including his furlough, reclassification, and termination, is pretextual.

56. As a direct and proximate result of Defendant's conduct described above, Mr. Ortiz has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

57. At all relevant times, Mr. Ortiz remained qualified to perform the essential functions of his position as a Warehouse Loader and Unloader, with or without a reasonable accommodation. His permanent oral disability and temporary speech impairment did not prevent him from performing the physical duties of his position.

58. On or about December 11, 2024, Mr. Ortiz returned to work following his medical leave. Upon his return, Defendant, through its manager Steve Paul, immediately acknowledged Mr. Ortiz's speech impairment. Steve Paul mocked and laughed at Mr. Ortiz and stated that he "did not sound like himself," drawing attention to and ridiculing his medical condition in the presence of others. Furthermore, Mr. Ortiz had notified the Defendant during orientation of his disability and need for accommodation.

59. Defendant, through its managerial personnel, was therefore aware of Mr. Ortiz's disability and/or regarded him as disabled. Rather than engaging in any discussion regarding his condition or treating him in a nondiscriminatory manner, Defendant subjected Mr. Ortiz to ridicule and adverse treatment because of his impairment.

60. Later that same day, on or about December 11, 2024, Defendant furloughed Mr. Ortiz. Upon information and belief, the decision to furlough Mr. Ortiz was motivated, at least in part, by his disability, request for accommodation (time off for his oral procedure) and/or Defendant's perception that he was disabled.

61. Thereafter, Defendant continued its discriminatory and retaliatory course of conduct by reclassifying Mr. Ortiz from permanent to seasonal status and ultimately terminating his employment.

62. Upon information and belief, similarly situated employees who were younger, heterosexual, and who did not have a disability or were not regarded as disabled were not subjected to comparable harassment, ridicule concerning a medical condition, furlough, reclassification, or termination under similar circumstances, and were treated more favorably than Mr. Ortiz.

63. Any purported legitimate, nondiscriminatory, or nonretaliatory reason offered by Defendant for furloughing, reclassifying, or terminating Mr. Ortiz is false, pretextual, and offered to conceal unlawful discrimination and retaliation based upon his disability, perceived disability, sexual orientation, age, and protected activity.

64. As a direct and proximate result of Defendant's unlawful conduct, Mr. Ortiz has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensatory damages.

**COUNT I**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 623(a)**

65. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

66. At all times relevant hereto, Mr. Ortiz was over forty (40) years of age and was therefore a member of the class of individuals protected by the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., and the Pennsylvania Human Relations Act.

67. Mr. Ortiz was qualified for his position with Defendant and performed his job duties satisfactorily.

68. Mr. Ortiz was subjected to a hostile work environment based on his age and to adverse employment actions, including furlough, reclassification from permanent to seasonal status, and termination.

69. Defendant's conduct toward Mr. Ortiz, including the age-based harassment described above and the adverse employment actions taken against him, was motivated in whole or in part by Mr. Ortiz's age.

70. The age-based comments directed at Mr. Ortiz were not isolated or stray remarks. Rather, they were made repeatedly throughout his employment by Steve Paul and other supervisory personnel who exercised authority over Mr. Ortiz's day-to-day work and, upon information and belief, participated in or influenced the decisions concerning his furlough, reclassification, and termination.

71. The repeated statements that Defendant "didn't need old-ass people working here" and questioning "why the fuck are they hiring old people" reflected Defendant's discriminatory attitude toward older employees and demonstrated hostility toward Mr. Ortiz because of his age.

72. Throughout his employment, Mr. Ortiz satisfactorily performed the essential functions of his position, met Defendant's legitimate performance expectations, and was never

issued any disciplinary warnings or corrective action that would justify the adverse employment actions subsequently taken against him.

73. Upon information and belief, Defendant retained and treated more favorably substantially younger employees who held the same or similar positions, despite Mr. Ortiz's satisfactory performance and qualifications. Unlike Mr. Ortiz, those younger employees were not subjected to repeated age-based ridicule, hostile treatment, furlough, reclassification, or termination under similar circumstances.

74. The same supervisory personnel who repeatedly expressed hostility toward older workers continued to supervise Mr. Ortiz until the decisions to furlough him, change his employment status from permanent to seasonal, and ultimately terminate his employment, thereby supporting a reasonable inference that age-based animus influenced those employment decisions.

75. The repeated age-related remarks, Defendant's differential treatment of Mr. Ortiz as compared to substantially younger employees, Mr. Ortiz's satisfactory work performance, the absence of any legitimate performance-based concerns, and the temporal relationship between the discriminatory conduct and Defendant's adverse employment actions support a reasonable inference that Mr. Ortiz's age was a motivating factor in Defendant's decisions to furlough, reclassify, and terminate his employment.

76. Defendant's conduct as described above constitutes unlawful discrimination in violation of the ADEA.

77. Defendant's violation of the ADEA was willful, entitling Mr. Ortiz to liquidated damages pursuant to 29 U.S.C. § 626(b).

78. As a direct and proximate result of Defendant's violation of the ADEA, Mr. Ortiz has suffered damages, including but not limited to lost wages and benefits and other compensable harm.

**COUNT II**
**AGE-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADEA**
**29 U.S.C. § 623(a)**

79. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

80. At all relevant times, Plaintiff was over forty years old and was therefore protected by the ADEA.

81. Throughout Plaintiff's employment, Defendant's managers and supervisors subjected him to unwelcome harassment because of his age.

82. The age-based harassment included repeatedly referring to Plaintiff as an "old-ass man," stating that Defendant did not need "old-ass people" working there, questioning "why the fuck are they hiring old people," and making other remarks expressing hostility toward older employees.

83. The age-based remarks were made by supervisory personnel who exercised authority over Plaintiff's work and participated in or influenced decisions affecting the terms and conditions of his employment.

84. The harassment was not limited to isolated or stray remarks. It was part of a continuing pattern of age-based hostility that included yelling at Plaintiff, excluding him from safety huddles and employee meetings, ignoring his work-related questions, subjecting him to unnecessary criticism, scrutinizing him more harshly than younger employees, and otherwise isolating and humiliating him in the workplace.

14

85. The age-based harassment occurred repeatedly throughout Plaintiff's employment and was sufficiently severe or pervasive to alter the conditions of his employment and create an intimidating, hostile, and abusive working environment.

86. Plaintiff subjectively perceived the working environment as hostile and abusive, and a reasonable person of Plaintiff's age under the same circumstances would likewise have perceived the environment as hostile and abusive.

87. The harassment detrimentally affected Plaintiff by causing humiliation, anxiety, emotional distress, and deterioration in the conditions of his employment.

88. Defendant knew or should have known about the age-based harassment because managers and supervisors participated in it and because Plaintiff reported the conduct directly to management and through Defendant's Ethics Hotline.

89. Despite having actual or constructive knowledge of the harassment, Defendant failed to conduct a meaningful investigation, take prompt corrective action, discipline the responsible personnel, or prevent the harassment from continuing.

90. The conduct of Defendant's managers and supervisors is imputable to Defendant.

91. Defendant's conduct created and maintained a hostile work environment because of Plaintiff's age, in violation of the ADEA, 29 U.S.C. § 623(a).

92. Defendant acted willfully and with knowledge or reckless disregard of whether its conduct violated the ADEA.

93. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**COUNT III**

**SEX DISCRIMINATION (SEXUAL ORIENTATION) IN VIOLATION OF TITLE VII,**
**42 U.S.C. § 2000e-2(a)**

94.     Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

95.     Mr. Ortiz, as a gay man, is a member of a class protected under Title VII from discrimination because of sex, including sexual orientation.

96.     Mr. Ortiz was qualified for his position with Defendant and performed his job duties satisfactorily.

97.     Mr. Ortiz was subjected to severe and/or pervasive harassment because of his sexual orientation, creating a hostile work environment, and to adverse employment actions, including furlough, reclassification, and termination.

98.     The individuals who harassed Mr. Ortiz, including Manager Steve Paul, held supervisory authority over Mr. Ortiz, and their conduct is imputable to Defendant.

99.     Defendant's conduct toward Mr. Ortiz, including the harassment described above and the adverse employment actions taken against him, was motivated in whole or in part by Mr. Ortiz's sexual orientation.

100.    Employees who are not gay were treated more favorably than Mr. Ortiz under similar circumstances.

101.    Defendant's conduct as described above constitutes unlawful discrimination because of sex, in violation of Title VII.

102.    Defendant engaged in the discriminatory practices described above with malice or with reckless indifference to Mr. Ortiz's federally protected rights, entitling Mr. Ortiz to punitive damages, subject to the limitations of 42 U.S.C. § 1981a.

103. As a direct and proximate result of Defendant's violation of Title VII, Mr. Ortiz has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**COUNT IV**
**SEXUAL-ORIENTATION-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**
**42 U.S.C. § 2000e-2(a)**

104. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

105. Plaintiff is a gay man and is protected from discrimination because of sex, including sexual orientation, under Title VII.

106. Throughout Plaintiff's employment, Defendant's managers and supervisors subjected him to unwelcome harassment because of his actual or perceived sexual orientation.

107. The harassment included statements that Defendant did not want "any fags working here," questions about whether Plaintiff was gay because he was supposedly "too soft," and other derogatory and homophobic remarks.

108. During workplace huddles and in the presence of other employees, supervisors reacted to Plaintiff's arrival by making humiliating sexualized remarks, including, "Watch out for that one—he will grab your ass," and substantially similar comments based on stereotypes concerning gay men.

109. The homophobic and sexualized comments were accompanied by a broader pattern of exclusionary and hostile treatment, including excluding Plaintiff from workplace huddles and employee meetings, ignoring his work-related questions, speaking to him in a demeaning manner, subjecting him to unnecessary criticism, and isolating him from his coworkers.

110. Defendant's supervisors treated younger heterosexual employees more favorably and did not subject them to comparable homophobic ridicule, sexual stereotyping, humiliation, or exclusion.

111. The harassment was not accidental, isolated, or based on ordinary workplace disagreements. It occurred repeatedly throughout Plaintiff's employment and was directed at him because he is gay or was perceived as gay.

112. The cumulative harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

113. Plaintiff subjectively perceived the working environment as hostile and abusive, and a reasonable person in Plaintiff's position would likewise have perceived the environment as hostile and abusive.

114. The harassment detrimentally affected Plaintiff by causing humiliation, anxiety, emotional distress, embarrassment, and deterioration in the conditions of his employment.

115. Defendant knew or should have known of the harassment because managers and supervisors participated in it and because Plaintiff reported the discriminatory conduct directly to management and through Defendant's Ethics Hotline.

116. Rather than conduct a prompt and meaningful investigation or take appropriate corrective action, Defendant's managers laughed at and dismissed Plaintiff's concerns, closed his complaints without adequate investigation, and permitted the harassment to continue.

117. The conduct of Defendant's managers and supervisors is imputable to Defendant.

118. Defendant's conduct created and maintained a hostile work environment because of Plaintiff's sex, including his sexual orientation, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

119. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages subject to 42 U.S.C. § 1981a.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

## COUNT V
### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA, 42 U.S.C. § 12112

121. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

122. Defendant is, and at all relevant times was, subject to the requirements of the ADA.

123. Mr. Ortiz has, and/or was regarded by Defendant as having, a disability within the meaning of the ADA, 42 U.S.C. § 12102, as a result of the speech impediment he developed following his oral surgery, which substantially limited one or more major life activities.

124. Mr. Ortiz was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation.

125. Defendant was aware of Mr. Ortiz's actual and/or perceived disability, as demonstrated by, among other things, Manager Steve Paul's comments mocking Mr. Ortiz's speech impediment upon his return to work.

126. On the same day that Defendant became aware of Mr. Ortiz's disability upon his return from medical leave, Defendant furloughed Mr. Ortiz.

127.     Mr. Ortiz's actual or perceived disability was a motivating factor in Defendant's decision to furlough Mr. Ortiz and in Defendant's subsequent adverse employment actions against him, including his reclassification and termination.

128.     Non-disabled employees were not subjected to the same adverse employment actions as Mr. Ortiz under similar circumstances.

129.     Defendant's conduct as described above constitutes unlawful discrimination on the basis of disability, in violation of the ADA.

130.     As a direct and proximate result of Defendant's violation of the ADA, Mr. Ortiz has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

**COUNT VI**
**DISABILITY-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA**
**42 U.S.C. § 12112(a)**

131.     Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

132.     Plaintiff had an actual disability within the meaning of the ADA because his dental and oral impairment substantially limited major life activities, including eating, chewing, and speaking.

133.     Alternatively, Defendant regarded Plaintiff as having a physical impairment within the meaning of the ADA.

134.     Plaintiff was qualified to perform the essential functions of his position, with or without a reasonable accommodation.

135. Defendant knew of Plaintiff's actual or perceived disability because Plaintiff informed Defendant of his dental and oral impairment, the limitations it imposed, his need for extensive oral surgery, and his need for medically necessary leave.

136. After Plaintiff underwent the extraction of all his teeth and returned from medical leave with a noticeable speech impairment, Defendant's managers and supervisors subjected him to unwelcome ridicule and hostile treatment because of his actual or perceived disability.

137. Among other things, Steve Paul mocked and laughed at Plaintiff's speech impairment, remarked that Plaintiff did not "sound like himself," and called attention to Plaintiff's impairment in a humiliating manner.

138. Defendant's supervisory personnel also attacked the legitimacy of Plaintiff's medical condition and absence by falsely claiming that his authentic physician's note was fraudulent and by spreading false accusations that Plaintiff had a drug problem.

139. This conduct was accompanied by exclusion, hostility, differential treatment, the unexplained alteration of Plaintiff's permanent employment status while he was on medical leave, and the furlough and termination of Plaintiff upon or shortly after his return.

140. The disability-based ridicule and related hostile treatment were objectively offensive and were particularly humiliating because they targeted the physical and speech-related effects of Plaintiff's full-mouth extraction immediately after he returned from medically necessary leave.

141. The conduct was sufficiently severe or pervasive, when considered under the totality of the circumstances, to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

142.     Plaintiff subjectively perceived the environment as hostile and abusive, and a reasonable person with the same actual or perceived impairment would likewise have perceived it as hostile and abusive.

143.     The harassment detrimentally affected Plaintiff by causing humiliation, embarrassment, anxiety, emotional distress, and deterioration in the conditions of his employment.

144.     Defendant knew or should have known of the disability-based harassment because managers and supervisors participated in it.

145.     Defendant failed to prevent or promptly correct the disability-based harassment, and the conduct of its managers and supervisors is imputable to Defendant.

146.     Defendant's conduct created and maintained a hostile work environment because of Plaintiff's actual or perceived disability, in violation of the ADA, 42 U.S.C. § 12112(a).

147.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages subject to 42 U.S.C. § 1981a.

148.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

### COUNT VII
### RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3(a)

149.     Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

150.     Mr. Ortiz engaged in activity protected under Title VII by filing internal ethics complaints concerning, among other things, the discriminatory harassment he was experiencing.

151.     Defendant knew of Mr. Ortiz's protected activity.

152. Shortly after each of Mr. Ortiz's ethics complaints was closed, Defendant took materially adverse action against Mr. Ortiz, including reclassifying his employment from permanent to seasonal status and, ultimately, terminating his employment.

153. The temporal proximity between Mr. Ortiz's protected activity and Defendant's adverse actions, together with the other circumstances described above, establishes a causal connection between Mr. Ortiz's protected activity and Defendant's adverse actions.

154. Defendant's conduct as described above constitutes unlawful retaliation in violation of Title VII.

155. As a direct and proximate result of Defendant's retaliation, Mr. Ortiz has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

## COUNT VIII
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 951 ET SEQ.

156. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

157. Defendant is an "employer," and Mr. Ortiz is an "employee," within the meaning of the PHRA, 43 P.S. § 954.

158. Defendant's conduct described above — including its harassment and discrimination against Mr. Ortiz on the basis of age, sex (including sexual orientation), and disability, and its retaliation against Mr. Ortiz for engaging in protected activity — also constitutes unlawful discriminatory practices under the PHRA, 43 P.S. § 955.

159. As a direct and proximate result of Defendant's violations of the PHRA, Mr. Ortiz has suffered damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensable harm.

## COUNT IX
## RETALIATION IN VIOLATION OF THE ADEA
## 29 U.S.C. § 623(d)

160. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

161. The ADEA prohibits an employer from discriminating against an employee because the employee opposed a practice made unlawful by the ADEA or otherwise exercised rights protected by the ADEA.

162. Plaintiff engaged in activity protected by the ADEA when he complained to Defendant's managers about the repeated age-based harassment and discriminatory treatment to which he was being subjected, including supervisors' statements that Defendant did not need "old-ass people" working there and questioning why Defendant was hiring older employees.

163. Plaintiff further engaged in protected activity under the ADEA by submitting internal complaints through the UPS Ethics Hotline concerning age-based harassment, hostile treatment, and disparate treatment by Defendant's supervisory personnel.

164. Plaintiff reasonably and in good faith believed that the conduct he reported constituted unlawful age discrimination and harassment.

165. Defendant knew of Plaintiff's protected activity because Plaintiff made his complaints directly to Defendant's managers and through Defendant's internal Ethics Hotline.

166. Rather than meaningfully investigate Plaintiff's complaints or take corrective action, Defendant dismissed his concerns, closed his Ethics Hotline complaints without an adequate investigation, and permitted the hostile treatment to continue.

24

167. After Plaintiff complained about age discrimination, Defendant subjected him to materially adverse actions, including continued harassment and exclusion, reclassification from permanent to seasonal employment, furlough, and termination.

168. The adverse actions taken against Plaintiff were sufficiently serious to dissuade a reasonable employee from reporting or opposing unlawful age discrimination.

169. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by, among other things, their close temporal proximity, Defendant's dismissive response to his complaints, the continuation of hostility after he complained, his satisfactory performance, and the absence of any prior disciplinary record.

170. Defendant would not have subjected Plaintiff to the foregoing materially adverse actions but for his complaints about and opposition to age discrimination.

171. Any legitimate, nonretaliatory reason offered by Defendant for its treatment of Plaintiff is false and pretextual and was offered to conceal Defendant's retaliatory motive.

172. Defendant's conduct constitutes unlawful retaliation in violation of the ADEA, 29 U.S.C. § 623(d).

173. Defendant's violation of the ADEA was willful, entitling Plaintiff to all relief available under 29 U.S.C. § 626(b).

174. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages, lost employment benefits, and other compensable harm.

**COUNT X**
**RETALIATION IN VIOLATION OF THE ADA**
**42 U.S.C. § 12203(a)**

175. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

176. The ADA prohibits an employer from discriminating against an employee because the employee opposed an act or practice made unlawful by the ADA or exercised rights protected by the ADA.

177. At the outset of his employment, Plaintiff notified Defendant that he had a physical impairment affecting his teeth and mouth that substantially limited his ability to eat, chew, and speak; that he required extensive oral surgery to treat the condition; and that he would need medically necessary leave to undergo and recover from the procedure.

178. Plaintiff engaged in activity protected by the ADA when he requested medically necessary leave as a reasonable accommodation for his physical impairment and anticipated oral surgery.

179. Plaintiff further exercised rights protected by the ADA when he took the requested medical leave, returned to work following the procedure, and presented Defendant with an authentic physician's note substantiating his surgery and medically necessary absence.

180. Plaintiff's request for a reasonable accommodation constituted protected activity under the ADA regardless of whether Defendant ultimately believed that Plaintiff's impairment satisfied the statutory definition of disability.

181. Defendant knew of Plaintiff's protected activity because its supervisory and managerial personnel received notice of his impairment, anticipated surgery, need for medically necessary leave, accommodation request, and supporting medical documentation.

182. After Plaintiff requested and utilized disability-related medical leave, Defendant subjected him to materially adverse actions, including changing his employment classification

26

from permanent to seasonal, questioning the legitimacy of his medical documentation, furloughing him, and terminating his employment.

183. Defendant's supervisors further subjected Plaintiff to retaliatory hostility upon his return from medical leave, including mocking his resulting speech impairment and falsely accusing him of submitting a fraudulent physician's note.

184. The adverse actions taken against Plaintiff were sufficiently serious to dissuade a reasonable employee from requesting a reasonable accommodation or otherwise exercising rights protected by the ADA.

185. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by, among other things, the change in his employment classification while he was on medical leave, the hostility he encountered upon returning, the false attack on his physician's note, and his furlough and termination immediately upon or shortly after his return.

186. At the time of these events, Plaintiff was qualified to perform the essential functions of his position, with or without a reasonable accommodation, had performed his duties satisfactorily, and had not received disciplinary warnings or corrective action.

187. Defendant would not have reclassified, furloughed, or terminated Plaintiff but for his request for a reasonable accommodation, his disability-related medical leave, and his exercise of rights protected by the ADA.

188. Any legitimate, nonretaliatory reason offered by Defendant for its treatment of Plaintiff is false and pretextual and was offered to conceal Defendant's retaliatory motive.

189. Defendant's conduct constitutes unlawful retaliation in violation of the ADA, 42 U.S.C. § 12203(a).

190. Defendant engaged in the retaliatory conduct with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to all relief available under the ADA.

191. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

**COUNT XI**
**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PHRA**
**43 P.S. § 955(a)**

192. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

193. Defendant is an "employer," and Plaintiff is an "employee" and "individual," within the meaning of the PHRA.

194. Plaintiff was protected from discrimination under the PHRA because of his age, sex, sexual orientation, and actual or perceived disability.

195. Plaintiff was qualified for his position and satisfactorily performed its essential functions, with or without a reasonable accommodation.

196. Defendant discriminated against Plaintiff because of his age, sex, sexual orientation, and actual or perceived disability by subjecting him to adverse employment actions, including reclassification from permanent to seasonal status, furlough, and termination.

197. Defendant also subjected Plaintiff to unwelcome harassment because of his age and sexual orientation, including repeated age-based insults, homophobic slurs, sexual stereotypes, humiliation in front of coworkers, exclusion from workplace meetings, and other hostile and demeaning treatment.

198. Following Plaintiff's oral surgery, Defendant further subjected him to disability-based ridicule and hostility, including mocking his speech impairment, attacking the legitimacy of his physician's note, and subjecting him to adverse treatment upon his return from medically necessary leave.

199. The discriminatory harassment was sufficiently severe or pervasive, considered under the totality of the circumstances, to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and abusive working environment.

200. Plaintiff subjectively perceived the environment as hostile and abusive, and a reasonable person in Plaintiff's position would likewise have perceived it as hostile and abusive.

201. Defendant knew or should have known of the discriminatory harassment because managers and supervisors participated in it and because Plaintiff reported the conduct to management and through Defendant's Ethics Hotline.

202. Defendant failed to conduct a meaningful investigation, take appropriate corrective action, discipline the responsible personnel, or prevent the discriminatory harassment from continuing.

203. Employees outside Plaintiff's protected classes were not subjected to comparable harassment, ridicule, exclusion, reclassification, furlough, or termination under similar circumstances.

204. Plaintiff's protected characteristics were motivating and determinative factors in Defendant's treatment of him.

205. Any legitimate, nondiscriminatory reason offered by Defendant is false and pretextual and was offered to conceal unlawful discrimination.

206. Defendant's conduct constitutes unlawful discrimination and the creation of a hostile work environment in violation of the PHRA, 43 P.S. § 955(a).

207. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff suffered lost wages and benefits, emotional distress, humiliation, embarrassment, mental anguish, and other compensable harm.

## COUNT XII
## RETALIATION IN VIOLATION OF THE PHRA
### 43 P.S. § 955(d)

208. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

209. Defendant is an "employer," and Plaintiff is an "employee," within the meaning of the PHRA, 43 P.S. § 954.

210. Section 955(d) of the PHRA prohibits an employer from discriminating against an employee because the employee opposed a practice forbidden by the PHRA or made a complaint or otherwise exercised rights protected by the PHRA.

211. Plaintiff engaged in activity protected by the PHRA when he complained to Defendant's managers and through the UPS Ethics Hotline about discrimination, harassment, and disparate treatment based on his age and sex, including his sexual orientation.

212. Plaintiff reasonably and in good faith believed that the discriminatory and harassing conduct he reported was prohibited by the PHRA.

213. Plaintiff also engaged in protected activity under the PHRA when he notified Defendant of his physical impairment and its effect on major life activities, requested medically necessary leave as a reasonable accommodation, took the requested leave, and provided medical documentation substantiating his surgery and absence.

30

214. Defendant knew of Plaintiff's protected activity because Plaintiff made his discrimination complaints directly to management and through Defendant's Ethics Hotline and informed Defendant's supervisory and managerial personnel of his physical impairment, anticipated surgery, accommodation request, and need for medical leave.

215. Rather than investigate Plaintiff's complaints, correct the discriminatory conduct, or appropriately address his request for an accommodation, Defendant laughed at and dismissed his concerns, closed his internal complaints without a meaningful investigation, and permitted the hostile treatment to continue.

216. After Plaintiff engaged in these protected activities, Defendant subjected him to materially adverse actions, including continued harassment and exclusion, reclassification from permanent to seasonal employment, ridicule concerning his medical condition, false accusations concerning his physician's note, furlough, and termination.

217. These actions were sufficiently adverse to dissuade a reasonable employee from reporting discrimination, requesting an accommodation, or otherwise exercising rights protected by the PHRA.

218. A causal connection exists between Plaintiff's protected activity and Defendant's adverse actions, as demonstrated by the close temporal proximity between those events, Defendant's dismissive and hostile response to his complaints, the reclassification of his employment while he was on medical leave, the treatment he encountered upon returning, and his subsequent furlough and termination.

219. Plaintiff performed his job satisfactorily, remained qualified for his position, and had not received any discipline or corrective action that would legitimately explain Defendant's adverse actions.

220.     Defendant would not have subjected Plaintiff to the foregoing materially adverse actions but for his opposition to unlawful discrimination, his internal complaints, his request for a reasonable accommodation, and his exercise of rights protected by the PHRA.

221.     Any legitimate, nonretaliatory reason offered by Defendant for its treatment of Plaintiff is false and pretextual and was offered to conceal Defendant's retaliatory motive.

222.     Defendant's conduct constitutes unlawful retaliation in violation of the PHRA, 43 P.S. § 955(d).

223.     As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer lost wages and employment benefits, emotional distress, humiliation, embarrassment, mental anguish, and other damages recoverable under the PHRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Junior Ortiz, respectfully requests that this Court enter judgment in his favor and against Defendant, United Parcel Service, Inc., on all Counts of this Complaint, and award the following relief:

(a) Back pay and lost benefits, together with prejudgment interest;

(b) Front pay and/or reinstatement to a comparable position;

(c) Compensatory damages for emotional distress, humiliation, and other non-pecuniary losses;

(d) Punitive damages, to the extent permitted by law;

(e) Liquidated damages pursuant to 29 U.S.C. § 626(b) for Defendant's willful violation of the ADEA;

(f) All damages and remedies available under the PHRA, 43 P.S. § 962;

(g) Reasonable attorneys' fees, expert fees, and costs of suit pursuant to 29 U.S.C. § 626(b), 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and 43 P.S. § 962(c.2);

(h) Pre- and post-judgment interest as allowed by law; and

(i) Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

*/s/ Joseph F. Leeson, III*
Joseph F. Leeson, III, Esquire
PA Attorney I.D. No. 328520
Leeson & Leeson
70 East Broad Street, P.O. Box 1426
Bethlehem, PA 18016
jleeson@leeson-law.com
Attorney for Plaintiff, Junior Ortiz
Dated: August 4, 2026